LIPPMAN (YOUNG v.). See Case No. 18,160.

LIPPMANN (EGBERT v.). See Case No. 4,306.

LIQUIDATION, BOARD OF (McCOMB v.). See Case No. 8,707.

———

## Case No. 8,383.

### LISBERGER v. GARNETT.

[1 Hughes, 620.] [1]

Circuit Court, E. D. Virginia.  Sept. Term. 1877.

BANKRUPTCY — BOND FOR GOODS SEIZED — PETITION TREATED AS BILL — FRAUDULENT ASSIGNMENT—VALIDITY OF PROCEEDINGS AGAINST SURETY ON BOND.

1. A petition against a bankrupt and against his sureties. in a bond for goods seized, who were not otherwise parties to the bankruptcy proceedings. may, if in substance a bill. be remanded to rules, and proceeded in as a bill in chancery on the equity side of the United States district court.

2. A stock of goods of an involuntary bankrupt, charged to have been sold fraudulently, was seized by the marshal under an order of the bankruptcy court. By subsequent order of the same court, the goods were delivered to the purchaser on his giving bond with sufficient surety to answer any order of the court in respect to the transaction.

3. A petition was filed by the assignee, charging that the sale was fraudulent. and praying that it might be set aside and the value of the stock of goods paid to him as assets for distribution. making the purchaser and his sureties parties defendant.

4. This petition was heard finally after the decisions of the supreme court were rendered in Smith v. Mason [14 Wall. (81 U. S.) 419], and Marshall v. Knox [16 Wall. (83 U. S.) 551], and the court ordered that it be dismissed as a petition and remanded to rules as a bill. to be heard after plenary proceedings. On petition to the circuit court for revision of this order, it was by that court affirmed.

5. The petition having matured as a bill, was afterwards heard finally, and a final decree entered. declaring the sale of the stock of goods to have been fraudulent; and requiring the purchaser to pay the value of them as fixed by the decree with interest from the day of the fraudulent sale, to the assignee in bankruptcy. On appeal to the circuit court from this decree, the same was affirmed.

6. It was unnecessary for the circuit court to decide, and therefore it did not decide. whether the original summary proceeding by petition in bankruptcy against the purchaser of the goods

———

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

and the sureties on his bond given for the possession of them when they were seized. was valid as against those parties.

[Appeal from the district court of the United States for the Eastern district of Virginia.]

On the 17th day of June, 1870, Storrs Brothers, and Blair & Thaxton, claiming to be creditors of Engle & Son, filed their petition in the district court, alleging the commission of sundry acts of bankruptcy, and praying that said firm be adjudicated bankrupts. The petitioners also alleged that the principal assets of Engle & Son consisted of a stock of goods, which had been sold to one S. Lisberger; that the sale was in fraud of the bankrupt act [of 1867 (14 Stat. 517)], null and void, and it was prayed that an injunction might issue, to restrain Lisberger from disposing of the goods, and that a warrant of seizure might issue to the marshal. The restraining order, and the order for the seizure, were issued and executed on the day the petition was filed, and they were issued and executed without exacting from the petitioners any bond or other security. On the 18th of June, 1870, Lisberger petitioning therefor, it was ordered that the goods be restored to him upon his executing a bond, with security, in the penalty of $8,000, conditioned for the forthcoming of the goods, or the value thereof, upon the order of the court. The bond thus required of Lisberger was given, and the goods were returned to him, his bondsmen being M. Rosenbaum and Waggoner & Harvey. The case remained in this posture until the 12th day of April, 1871, when E. M. Garnett, alleging that he had been substituted, as assignee, in the place of one Brown, filed his petition "In the matter of Storrs Bros. et al. v. Engle & Son, in bankruptcy," in which he alleged that he had been appointed and had accepted the position of assignee of said Engle & Sons, who had been adjudicated bankrupts, and that an assignment of the estate of said bankrupts had been made to him. but that their schedules exhibited no assets whatever, except individual property, furniture, etc., claimed as exempt. It was also charged that the sale to Lisberger was void under the bankrupt act. The petitioner then set forth the seizure of the goods by the marshal, their release upon delivery of the forthcoming bond, and prayed that Lisberger be ordered to deliver up the goods, or pay the value thereof. and in case of non-delivery, to make good any loss on account of sales subsequent to his purchase, and in default of such payment by Lisberger, that he and his sureties on the forthcoming bond be required to pay "the amount therein promised," and if the value should exceed the amount of the bond, then that Lisberger be required to pay such excess in value.

Petitioner finally prayed that Lisberger and his sureties upon the bond might be made defendants, and required to answer

the petition on oath, and that such further relief might be granted as is conformable to equity and the nature of the case. On the 6th May, 1871, Lisberger appeared and demurred to the petition, upon the ground, set forth in the demurrer, that the petitioner had no right to proceed against defendant by petition, or any other form of summary proceeding, and that the remedy, if any he had, was by bill in equity or action at law. The demurrer was overruled, and on the 8th of May, Lisberger, still objecting to the jurisdiction, answered, denying the material allegations of the petition. There were several trials of the facts in issue before a jury subsequently to this, but the jury disagreed at each trial. So that upon this state of pleadings the case stood, without further order therein, until the 16th day of June, 1874, when upon the motion of Lisberger, the judge of the district court dismissed the petition for want of jurisdiction with an order for his costs. On the 11th of July, 1874, however, an order was passed in the bankruptcy suit, in which is recited the fact that the court had, on the 16th day of June, 1874, dismissed the petition, and then it is stated that the assignee having, on the 19th of June, 1874, moved for a rehearing of Lisberger's motion to dismiss, which motion to rehear was continued until the 11th of July, and the court being then willing to entertain said motion, with the view of amending the petition in bankruptcy, so that it might be filed at rules and be proceeded in as a bill in chancery, fixed the 16th day of July as the day for such rehearing, and directed that copies of the order should be served on Lisberger and his counsel. On the 8th day of October, 1874, another order was passed, in which, after reciting continuances of the motion to rehear, the order dismissing the petition was set aside, and the petition filed April 12th, 1871, being regarded in substance as a bill in equity, it was ordered so to stand, to be proceeded with as such, and to that end it was directed that the cause be sent to rules, that process issue against the defendants, and that the cause be regularly matured according to law. In March, 1875, there is an entry at rules by the clerk, to the effect that subpoenas had been served on defendants, and there being no appearance or answer, complainant's bill was taken for confessed, and the cause set for hearing at the next term of the court. Meantime, Lisberger had appealed from the order of the district court, of October 8th, 1874, setting aside the dismissal of the petition, etc., to the circuit court in the exercise of its supervisory jurisdiction; which order, upon appeal, was, in all respects, affirmed. On the 7th of March, 1876, Waggoner & Harvey pleaded their discharge in bankruptcy. Lisberger demurred, pleaded the statute of limitations, and answered. Rosenbaum never appeared. In these proceedings the suit was conducted as a suit in equity. On the 10th

of May, 1876, a final order or decree was entered. The court, overruling the defence of the statute of limitations, and being of opinion that the sale was fraudulent in law as to the creditors of Engle & Sons, decreed that Lisberger should pay to the plaintiff the sum of $5,618.12, with interest from the 16th of May, 1870.

The following are the principal orders of the district court, which are referred to in the arguments of counsel and in the decision of the chief justice.

Order of the 11th July, 1874: In · this cause, the court having on the 16th of June, 1874, at the instance and on the motion of S. Lisberger, entered an order dismissing the petition in bankruptcy of E. M. Garnett, assignee of said Engle & Son, heretofore filed in this cause against said Lisberger and others, for want of jurisdiction in bankruptcy, and the said assignee, E. M. Garnett, having by counsel moved on the 19th of June, 1874, for a rehearing of the said Lisberger's motion to dismiss, and of the aforesaid order made thereon, which motion of the said assignee has been continued until to-day, and the court being willing to entertain the said assignee's motion for a rehearing, with a view to amending the said petition in bankruptcy, so as to make it a bill in chancery, in order that it may be sent to rules, to be proceeded in as a bill in chancery, doth hereby appoint the 16th day of July, instant, at the United States court room at Richmond, at the hour of 10 a. m., for the rehearing aforesaid, and for the hearing of any other motion that may be made by any of the parties to the cause. And it is directed that a copy of the order be served on the said S. Lisberger, and one also be mailed to E. Y. Cannon, Esq., of Richmond, and to L. H. Candler, Esq., of Washington City, counsel in this cause.

Order of 8th October, 1874: In this cause, the pending motion in which, adjourned from the 17th day of July, 1874, to the 8th day of September, instant, has been continued until this day, the court having maturely considered the said matter, is of opinion that a rehearing of the said motion of the said S. Lisberger for a dismissal of the said petition of said E. M. Garnett, assignee of Engle & Son, should be and the same is hereby granted; and the court being satisfied that the said order of the 16th day of June, 1874, entered at the instance of said Lisberger, dismissing said petition, was erroneous in not directing it to be proceeded with as a bill in chancery, doth set aside the same; and, considering that the said petition of said assignee, filed on the 12th day of April, 1871, is in substance a bill in equity, and ought under the circumstances, in furtherance of justice, to be so regarded and treated, the court doth order that the same do stand and be proceeded in as a bill, and for that purpose that the cause be remanded to rules, and process be issued against the de-

fendant, and the cause be regularly matured according to law.

Order of 10th May, 1876: The court having maturely considered this cause upon the papers formerly read, and upon the arguments of counsel, is of the opinion that the concurrent jurisdiction of a court of equity to set aside a conveyance or transfer of property made in fraud of the 35th and 39th sections of the bankrupt act, is not ousted by a like jurisdiction of a court of common law in such cases, doth sustain the jurisdiction of the court in this case, and the court having in the matter of Storrs v. Engle, by a decree entered on the 7th day of October, 1874, ordered that the petition therein filed by the said Edgar M. Garnett, assignee of said Engle & Son, against said Lisberger & Son, on the 12th day of April, 1871, should be considered and treated as a bill filed by the said assignee against the said parties, and the circuit court of the United States for the Eastern district of Virginia, on appeal to its supervisory jurisdiction in bankruptcy, having by a decree entered on the first day of November, 1875, and certified to this court, in all respects affirming the said decree of this court, and ordered and decreed that said petition should be considered and treated as a bill as of the day the said petition was filed, and there being no appeal from the said decree of the said circuit court, the court is of opinion that the matter of said ruling is res adjudicata, and doth proceed to consider and treat the said petition as a bill filed on the said 12th day of April, 1871, and doth overrule the objection of the statute of limitations thereto. And the court, proceeding to dispose of the case on its merits, is of opinion that the transfer on the 16th day of May, 1870, by said Engle & Son, who were retail dealers, of their whole stock of goods in bulk to the said Lisberger at fifty per cent. of their invoice prices, was under the circumstances fraudulent in law, and void as to the creditors of said Engle & Son, the court doth accordingly so declare and decree. And the court, being of opinion from all the evidence in the cause, that the price, to wit, $5,600, alleged to have been paid by S. Lisberger for the stock of goods in the proceedings mentioned is as much as could have been realized therefrom by any other method of sale, doth therefore adjudge, order, and decree that the said S. Lisberger do pay to the plaintiff the said sum of five thousand six hundred and eighteen dollars and fourteen cents, with legal interest thereon from the said 16th day of May, 1870, until paid, and the costs by the plaintiff in this behalf expended, and that execution issue for the same in accordance with the 8th rule of practice of the equity courts of the United States as promulgated by the supreme court.

Messrs. Legh R. Page and E. Y. Cannon, for Lisberger, the appellant.

Messrs. John Howard and Robert Stiles, for Garnett, assignee.

For appellant, it was insisted by Mr. Page:

1st. That the order for the seizure of the goods, claimed by Lisberger, and in his possession, the seizure and the bond exacted of him for their forthcoming, etc., all of which actings and doings were had in the bankruptcy suit against Engle & Son, to which Lisberger was no party, were absolutely null and void. Smith v. Mason, 14 Wall. [81 U. S.] 419; Marshall v. Knox, 16 Wall. [83 U. S.] 555; Marsh v. Armstrong [20 Minn. 81 (Gil. 66)]. The bond thus taken could not be made the foundation of a suit, either by petition, bill in equity, or action at law. Such seems also to have been the opinion of the learned judge of the district court, as he did not decree against either of the sureties on the bond.

2d. Lisberger not being a party to the suit in bankruptcy against Engle & Son, could not be proceeded against as their grantee, except in a plenary suit, either at law or in equity. This proposition is fully sustained by the authorities just cited, and by the case of Wiswall v. Campbell, decided at the last term of the supreme court of the United States, and not yet reported. See 93 U. S. 347. Chief Justice Waite, delivering the opinion of the court in the case last mentioned, says: "The circuit and district courts have concurrent jurisdiction of all suits in law or equity, brought by an assignee in bankruptcy, against any person claiming an adverse interest, or by any such person against an assignee, touching any property or rights of the bankrupt transferable to or vested in such assignee (Rev. St. § 4979), and such suits, when prosecuted, are no part of the bankruptcy proceeding. They are in aid of such proceeding, but while progressing, they are separate from and independent of it. They are used by the bankrupt court to settle the rights of parties who are not subject to its jurisdiction, and who, therefore, cannot be affected by any judgment or decree that may be made in that cause." The petition here was designed to drag into the suit in bankruptcy a stranger who claimed and possessed personal property adversely to the assignee, and to subject him and his rights to the summary power and jurisdiction of the bankrupt court. In Eyster v. Gaff, 91 U. S. 525, Mr. Justice Miller, speaking for the whole court in regard to such proceeding, said: "This court has steadily set its face against this view."

But it is said, and the learned judge of the district court seems to have entertained the opinion, that the petition of the assignee in the bankruptcy suit might be regarded as substantially a bill in equity. It was certainly not so considered by those who drafted it. It was not separate from, and independent of, the suit in bankruptcy, but was filed, and for years dealt with, as a part of

the bankruptcy proceeding. There was no prayer for process, and none was ever issued. The assignee indorsed on the petition that he had served copies of it upon the parties therein named as defendants, but we know of no law recognizing an assignee in bankruptcy as an official authorized to certify papers filed in the United States courts, or to serve copies of such papers as process to bind parties in judicial proceedings. At the time of these proceedings the bankrupt court of this district was eminently an ambulatory court, and the persons upon whom Mr. Garnett says he served copies of the petition were not informed when or where they were to appear and answer. Those parties were not bound to give heed to such a summons, and none of them did regard it, except Lisberger, who, admonished by the unlawful seizure of his goods at the beginning of the bankruptcy suit against Engle & Son, deemed it prudent to appear and challenge such a method of contesting his rights of property. It is true that when his demurrer was overruled he did answer, but in his answer he still objected to the jurisdiction. If the case set up in the petition, although presented in that questionable shape, had been one of purely equitable cognizance, and the appellant had voluntarily submitted to the jurisdiction, or perhaps if he had not seasonably objected, he might be held bound by the order or decree against him. But no such case is exhibited by the record. The petition was not separate from, or independent of, the bankruptcy, and could as well be treated as an action in trover as a bill in equity, and could as well, if not better, be tried by a jury than by a chancellor, even with the aid of a master. We submit, therefore, that the order of the district judge dismissing the petition and adjudging costs to Lisberger was plainly right, and fully justified by the authorities already referred to.

3d. The order of October 8th, 1874, setting aside the previous order dismissing the petition, with leave to the assignee to file the petition at rules as a bill in equity, and directing process to issue against the persons therein named as defendants, if it can have any legal effect whatever, should be regarded merely as an adjudication, that the dismissal of the petition was without prejudice to the assignee's right to file a bill. There is undoubtedly ground, from the face of the order and the subsequent action of the district judge, for the belief that the court intended that it might be treated as a bill from the date it was filed as a petition, and yet it is manifest, from an inspection of the order, that it was considered by the court that the petitioner had to begin de novo, file the paper in question as a bill, and have process issued and served according to the rules and practice of a court of equity. Those directions, made at the instance of petitioner, were literally followed by him. Writs of subpoena in due form were issued and

served, and as to the parties upon whom process had been executed the petition was taken as a bill confessed, and when afterwards they answered, they were required to answer anew, as if the petition were an original pleading, although it was unchanged in form or substance, and was the identical paper that so long had slumbered in the bankruptcy suit against Engle & Son. Why were these steps taken, if the petition in the bankruptcy suit was a bill in equity, and, when taken years after, will the assignee be heard to say that from the beginning he had been a suitor in equity, especially when it was objected at the threshold that his proceeding was unlawful? Parties litigant are not allowed to blow hot and cold after that fashion, and their adversaries, upon every principle of fairness, should be entitled to know at once when, in what forum, and under what system of procedure they are to make defence. If such somersaults are permissible in courts of justice, and the idea is to obtain that the petition was a bill from the date of its filing, then we insist that a court of equity has no power to grant a rehearing except upon petition for that purpose, properly filed, and after due notice to the parties to be affected by the rehearing.

The 88th equity rule prescribes the mode in which a rehearing is to be asked. It is enough to say, without quoting the rule, that no one of its requirements has been gratified in this case. When the order dismissing the petition, at the cost of the assignee, was passed, the defendant was discharged from further attendance at court, and all proceedings had thereafter, in his absence and without his consent, were coram non judice. After that order of dismissal, the next we hear of the case is from the order of July 11th, 1874, in which it is stated that a motion for a rehearing had been made on the 19th of June, 1874, and that the court being then (the 11th day of July) willing to hear such motion, the rehearing thereof was fixed for the 16th day of July. From the order it also appears that it was then, for the first time, considered that Lisberger, or his counsel, were entitled to be heard upon the motion, and it was therein directed that copies of the order should be served on him and his counsel. If the suit were in equity, a motion, as we have seen from the 88th rule, was not the proper proceeding to set aside a final decree, and if it were, at least some record of the motion should have been made at the time, but the record fails to show such entry, and fails also to show that Lisberger or his counsel did have notice. If it be admitted, in accordance with the very truth of the case, that the petition was designed and treated as a part of the bankruptcy suit, both by counsel and the court, it is easily understood how the court could, in a summary manner, set aside its judgments or orders at any time during its pendency, after proper notice. Until the petition was filed at rules,

as a bill in equity, there was not a single step taken in conformity to the rules and practice of a court of equity. They were all had upon the theory that the district court was exercising its ordinary jurisdiction in bankruptcy, and was always open, without regard to terms of court, to hear the assignee.

It has been suggested that the appellant is estopped to question the correctness of the order setting aside the dismissal of the petition, and directing it to be filed as a bill, because, upon appeal to the supervisory jurisdiction of the circuit court, that order was in all respects affirmed. In reply to this view, it would seem sufficient to say, that if the case were in equity, the circuit court had no power to exercise a supervisory jurisdiction in the premises. It could only be removed to the circuit court by a formal and regular appeal. Wiswall v. Campbell, cited supra, and authorities therein referred to, The effect of the order of affirmance was merely to declare that the bankrupt court was right in treating the petition as a suit in equity. Thereupon the district court sanctioned its prosecution as such a suit. It was no more then than an interlocutory order in the cause, subject to a review upon an appeal from the final decree.

4th. If the order setting aside the dismissal of the petition was right and proper, and the petition is to be regarded as a bill from the day it was directed to be filed as such, then we say the assignee's right of action was barred by the limitation of two years prescribed by section 5057, Rev. St. This plea is highly favored in the administration of bankrupt estates. Bailey v. Glover, 21 Wall. [88 U. S.] 342.

5th. It is further submitted that the final order or decree of the district court is erroneous, because there was no ascertainment of the debts of the bankrupts. The adjudication in this case, founded on such imperfect notice to the bankrupts, if valid, undoubtedly establishes their insolvency against all persons, but the fact of their insolvency is not alone sufficient to authorize the decree. For aught that appears to the contrary the amount decreed against Lisberger may be largely in excess of the debts proved, and the amount of debts proved is the measure of the assignee's right of recovery. The surplus belongs to Lisberger, the sale being valid as to Engle & Son, and only void as to their creditors, to the extent of the debts established against them. A review of the decision of the district court, upon the questions of fact, is not asked for by the appellant, as the evidence in the cause is very conflicting.

So much of Mr. Howard's printed argument as related to the two principal questions in the cause is given below:

I. The sole question now before this court, upon the pleadings, is as to the sufficiency of the bill. The district court having, by its or-

der of the 8th of October, 1874, directed the paper filed by Garnett, assignee, on the 12th day of April, 1871, to be considered and treated as a bill in equity, and that order having been affirmed in all respects by the decree of this court of the 1st of November, 1875, and that paper having been accordingly considered, treated, and proceeded upon in the district court as a bill in equity filed as of the day of its date, the sole and simple question before the court upon the pleadings now open for discussion is, whether or not that paper is in substance a good and sufficient bill. All the other questions sought to be raised are clearly matters which belong to the said proceedings of Storrs v. Engle, pending in the district court in bankruptcy, and those proceedings are not now for review or correction at all before this court, sitting as a court of equity on appeal, in a separate and independent case.

This simple statement, if true, eliminates from consideration the great bulk and gravamen of the argument on the other side. And is it not true? There is no dispute that the district court, in the proceedings in bankruptcy, acquired jurisdiction over Engle & Son and their estate, and over the assignee of its own appointment. Whatever defect of process there may have been, if any, Engle & Son answered the petition of the petitioning creditors, Storrs Bros. and others, and upon full hearing and argument the allegations of the petition were found to be true, and they were regularly adjudicated bankrupts; and if there were any irregularities in those proceedings, or in the subsequent proceedings in that case, they were and are nevertheless valid and binding until set aside or reversed by a court of competent jurisdiction; and whether or not Lisberger was in any sense a party to those proceedings, this is as true of the said order of the 8th of October, 1874, as of any other order made in the case. In point of fact he was as much a party to those proceedings as Engle & Son, after the important ex parte order of the 18th June, 1870, by which he obtained, upon his own petition, possession of the goods of Engle & Son. He was represented by counsel, and hotly contested every order in the case touching him, as well the order of the 8th October, 1874, as the rest, and certainly, on his appeal from that order to the supervisory jurisdiction of this court, he was fully heard by counsel.

This court certainly had before it then, sitting as a court of supervisory jurisdiction, all that it is now sought to bring before it again in respect to those proceedings, but with this difference, that then it had jurisdiction to revise and correct what, if anything, was erroneous in the said order of the 8th October, 1874, and the orders preceding it, in effect involved in that order, whereas now it has nothing to do with the matter. The whole question of the jurisdiction of the district court to enter said order was at that

appropriate time fully discussed and considered, and this is the decree of the court: "Upon the hearing of the matter of the said petition, the court is of opinion that the district court was of competent jurisdiction to consider and treat the paper styled a petition filed by the said Edgar M. Garnett, assignee of said Engle & Son, on the 12th day of April, 1871, as a bill in equity filed as of that day, and to direct process thereon as such, and that said district court did not err in so considering and treating the same. And the court doth adjudge, order, and decree that the same be so considered, and that the said petition of the said Lisberger be dismissed with costs." Dated November 1st, 1875.

If this honorable court had jurisdiction to pronounce that decree, the decree itself was final and irreversible, for, having been made in pursuance of its supervisory jurisdiction over proceedings in bankruptcy, there was and is no appeal, and right or wrong, it must stand as the law of the case. See the cases collected in Wiswall v. Campbell, 93 U. S. 347. That it did have such jurisdiction is as clear and as certain as that the district court had acquired jurisdiction in bankruptcy over Engle & Son and their estate, whatever it was, and the assignee of its own appointment. * * * This view disposes of all the alleged irregularities and errors of the district court in the proceedings in bankruptcy, even upon the supposition that Lisberger was not a party thereto; for whether or not he was a party to those proceedings, the court had jurisdiction to do what it did (in point of fact on his own motion), that is to say, refuse to litigate his rights in that case, and to direct that those rights should be litigated in a separate suit, the bill already filed in which it is recognized as a bill in equity for that purpose. If, however, this court, sitting in its supervisory jurisdiction, had no jurisdiction to enter the decree of the 1st of November, 1875, then clearly it must have been because the said paper, filed by the assignee in the district court on the 12th April, 1871, was in contemplation of law a bill in equity from the first, and the case was not properly before this court at that time as an appeal from the equity jurisdiction of the district court, but if that be so, then the said order of the district court of the 8th October, 1874, treating said paper as a bill in equity, was confessedly right ex hypothesi.

So that Lisberger can take his choice: If this court had jurisdiction to render its decree of November 1st, 1875, it was because it was sitting in supervisory jurisdiction, and upon that supposition its decree was final. If this court did not have jurisdiction to render that decree, it was because the said paper was a bill in equity, and no equity appeal was pending before the court. This argument has thus far proceeded upon the hypothesis that Lisberger was not a party

to the suit in bankruptcy against Engle & Son. It will now be shown that, in point of law and fact, Lisberger was a party, to all intents and purposes, to that suit, and, therefore, that the district court had full jurisdiction over him in that suit for the purposes of said petition or bill, in whichever or in whatever aspect it may be considered.

1. On the petition and proofs of Storrs Bros. and others, the district court had jurisdiction to enjoin interference with and to seize the property of Engle & Son charged to have been fraudulently transferred to Lisberger, and hold it provisionally until the question of fraud could be determined. See sections 1 and 40 of bankrupt act of 1867 (Rev. St. §§ 4972, 5024). Indeed, unless this were so, the whole object of the law in many cases would easily be defeated by fraudulent transfers of their property by insolvents in contemplation of bankruptcy, and no stronger illustration of the necessity and propriety of such jurisdiction need be imagined than the facts of this case afford. Even a common court of equity would have had such jurisdiction to prevent the consummation of a fraud.

2. This being true, the goods were in custodia legis the moment they were seized, and though the proceedings had been irregular (which was not the fact), they would still have been valid, as the court had express, clear, and full jurisdiction over the subject-matter and the parties.

3. By his petition of the 18th of June, 1870, the day after the seizure, Lisberger voluntarily intervened. He came into court and placed himself upon the record as a claimant of the goods, denied the allegations of the petitioning creditors as to his fraud, and prayed that the goods might be delivered to him upon condition that he would give bond and security for the forthcoming of the goods, or their value, to abide the order of the court. He thus voluntarily became a party to the proceedings, so far certainly as that property was concerned. Even the sureties on his bond became thereby parties, or quasi parties, for the purpose of giving the court summary jurisdiction over them to compel a compliance with their obligations. Thus in Blossom v. Milwaukee & C. R. Co., 1 Wall. [68 U. S.] 656, the court say: "Sureties signing appeal bonds, stay bonds, delivery bonds, and receiptors under writs of attachment, become quasi parties to the proceedings, and subject themselves to the jurisdiction of the court, so that summary judgments may be rendered on their judgments or recognizances." Now if even the sureties, by signing the bond, became parties, and subjected themselves to the jurisdiction of the court, so that summary judgments might be entered against them, why not their principal also? It was for his benefit that the bond was given, and he is the principal obligor therein, and primarily bound. Nay it

was upon the express condition of his giving the bond that he received the property in its stead, for the bond was but a substitute for the property, and whatever jurisdiction the court had over the property it has over the bond and the obligors therein by summary proceedings or otherwise. That the bond is but a "substitute for the property," is the very language of the supreme court in Inbusch v. Farwell, 1 Black [66 U. S.] 572, where it was so held in the case of property released on attachment—"the bond," says the court, "becomes a substitute for the property released."

But, in point of fact, Lisberger, before giving the bond, had already voluntarily made himself a party to the proceedings, so far as the property was concerned, and subjected himself to the jurisdiction by coming in by petition and denying the allegations of the petitioning creditors in respect to the fraudulent transfer of the property to him, and claiming it as his own, thereby putting in issue, as between the complainants and himself, all questions touching such fraudulent transfer; and, as the court had already rightly acquired full jurisdiction of the property by its lawful seizure, so now, by the voluntary appearance, pleading, and claim of the intervenor, Lisberger, it acquired full jurisdiction over him in respect to the claim he asserted. This is the common course of practice in all judicial proceedings, notably in admiralty and in all other proceedings, or quasi proceedings, in rem, and in none more properly than in proceedings in bankruptcy. In courts of equity the same principle applies and the same practice obtains. Thus, in the above-cited case of Blossom v. Milwaukee & C. R. Co., 1 Wall. [68 U. S.] 656, after the sentence above quoted, the court, in further illustration of the rule that parties, by voluntarily dealing with the court, make themselves parties to the proceedings and become subject to its jurisdiction, proceed to add, "So in the case of a creditor's bill, or other suit, by which a fund is to be distributed to parties, some of whom are not before the court, these are at liberty to come before the master after the decree, and establish their claims to share in the distribution." And if this can be done, as it is done in every-day practice, why cannot any party come in before decree and claim the property or fund as his own? And if in the one case he becomes a party to the proceedings, and subjects himself to the jurisdiction, why not in the other? Everybody knows that nothing is more common than this course of things in all kinds of legal proceedings, except those strictly at common law; and now, by statute in most of the states, similar proceedings by way of interpleader are expressly authorized and regulated in courts of common law.

Now, if a court of admiralty, of equity, or of common law, should turn over property lawfully under its charge to an intervening claimant asserting title thereto, such as a mortgagee or alleged purchaser, without notice of defect of title, upon condition of bond and security to have the property or its value forthcoming to abide the order of the court, would such intervening claimant be heard to say that he was not a party to the proceedings, and not subject to the jurisdiction of the court? Would he be heard to say, after submitting his claim to the court, that the court could not determine that claim, but that of necessity litigation as to that matter must be remitted to another forum and a different suit, and the court in the meantime be left powerless for the protection of the property and of the rights of the parties thereto, at whose suit it was lawfully taken into custody? After having, upon suitable representations, and by submitting to the jurisdiction, obtained possession of the property, and given bond as its substitute, would it not be the coolest effrontery to deny that jurisdiction to enforce the bond? And if the court has jurisdiction to enforce the bond, must it not have jurisdiction to determine the preliminary question whether it ought to be enforced, and thus necessarily all questions touching the true ownership of the property? Otherwise, obviously, the trick of getting possession of the property ousts the jurisdiction, by an appeal to which alone the trick was possible.

The plain and elementary truth is, that any court of competent jurisdiction which lawfully gets possession of property may lawfully hold on to it, or its representative, to answer the ends of justice. And whoever, in court or out of court, interferes with that possession, challenges and subjects himself to the process of the court to compel him to do what is right, by restoration or compensation, and will not be heard to question the title of the court, until by such means or by such order as the court may prescribe, he shall have purged himself of the contempt of intermeddling with its lawful authority and the property under its control. If this were not so, the authority and dignity of courts of justice and the safety of property under their lawful charge would be at the mercy of the fraudulent and the lawless, as it has been in this case.

In this case the property was already under the jurisdiction and within the custody of the court, and so remained after the bond was given as much so as it was before, the bond being its substitute and representative, and the only legal effect of the petition, appearance, and claim of a claimant was to put the claimant and his claim also under the jurisdiction and make them subject to the orders and process of the court, as any other party and claim. In Minnesota Co. v. St. Paul Co., 2 Wall. [69 U. S.] 634, the supreme court say: "It would indeed be very strange if these parties can come into court by petition, and get possession of that which was the subject of litigation, and then when

the wrong they have done by that proceeding is corrected, they shall be permitted to escape by denying that they were parties to the suit. In the case of Blossom v. Milwaukee & C. R. Co., 1 Wall. [68 U. S.] 655, this matter was fully discussed," etc., etc. Cited supra.

It would be a strange and abnormal anomaly, if there was anything in the jurisprudence of the law of bankruptcy, and the jurisdiction conferred upon courts of bankruptcy, so peculiarly engaged in the administration of insolvent estates and the detection and prevention of fraud, and singularly combining in their legal nature and operation the elements and powers of courts of admiralty and courts of equity—to except, exempt, and distinguish such a court from the otherwise universal and fundamental rules, principles, and practice of courts of justice in respect of property lawfully under their charge. Accordingly no such anomaly exists. On the contrary, the reverse has been expressly decided by the supreme court. In Wiswall v. Campbell, 93 U. S. 351, the court, through Mr. Chief Justice Waite, say: "Every person submitting himself to the jurisdiction of the bankrupt court in the progress of the cause, for the purpose of having his right in the case determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceedings. A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences." But if a creditor who only claims a part of the bankrupt's estate, subjects himself to the jurisdiction, why not a petitioner who comes in and claims the whole, demands its allowance, and gets possession of it upon condition of having it or its value forthcoming when required by the court? Did the district court oust its jurisdiction by the very act of best preserving it—by taking bond and security as a substitute for the property?

And after the court, by the adjudication in bankruptcy, had adjudged the transfer by Engle & Son of their whole stock of goods to Lisberger to be fraudulent and void, was it less competent to enforce the bond than it would have been to hold on to the property? And after it had thus determined the transaction to be a fraud upon the creditors, was it powerless to prevent Lisberger from committing a fraud also upon itself by first getting the whole estate of the bankrupts out of its possession, and then denying its right to hold him responsible therefor, although he had solemnly bound himself under hand and seal to respond to its orders? To such a case Smith v. Mason, 14 Wall. [81 U. S.] 419, and Marshall v. Knox, 16 Wall. [83 U. S.] 551, had no application. Those were cases in which persons claiming adverse rights to the assignee were strangers to the

proceedings in bankruptcy, and it was sought by summary process on petition to bring them before the court and require them to litigate their rights in the bankrupt suit, and it was held that the court had no jurisdiction for such purpose. But those decisions themselves expressly except cases in which such persons voluntarily appear in the bankrupt suit, and ask its aid, and thereby submit to its jurisdiction.

The case in principle is like that of In re Ulrich [Case No. 14,327], in which it was held by Blatchford, J., that after a stranger had voluntarily appeared in a bankrupt suit, it was too late for him to object to the jurisdiction, having waived the objection by his appearance, which appearance he was not permitted to withdraw, though alleged to have been made under a mistake. Here Lisberger voluntarily appeared, and was already a party when the assignee's petition was filed, and it was too late for him then to object to the litigation of his claim in that suit, in any proper manner the court might adopt. And recent adjudications of the supreme court have now fully established the point that strangers by voluntarily appearing in a bankrupt suit and invoking its aid, become parties thereto, and will not be heard to deny the jurisdiction they have thus set in motion as to themselves, and from which they have sought and obtained advantage. In O'Brien v. Weld, 92 U. S. 83, 84, execution creditors in whose behalf the sheriff had levied execution and held lawful possession of property under process from a state court, issued before the bankruptcy of the debtor-owner, came into the bankrupt suit, by petition after the adjudication of the debtor-owner as bankrupt, and prayed that the terms of the sheriff's sale might be modified, and that the proceeds of sale might be brought into that court, which was accordingly done, and it was held that the intervenors had thereby made themselves parties to the bankrupt suit, and were bound by the proceedings therein. And while recognizing Smith v. Mason [supra], and Marshall v. Knox [supra], the court distinguished those cases from that of a claimant who, of his own motion, comes into a bankrupt suit and gets orders at its hands, and decided that to such a case the principle of those cases did not apply. And, as we have seen, following O'Brien v. Weld [supra], is Wiswall v. Campbell, supra, in which the general principle applicable to every court of competent jurisdiction over a subject-matter of litigation, that any person who seeks its aid submits himself to its power, was fully and clearly recognized and illustrated.

The present, it is submitted, was a stronger case than either of these for the application of this principle. In the exercise of an undoubted jurisdiction, the court had seized the whole stock of trade charged to have been recently transferred by the bankrupts in bulk to Lisberger in fraud of the

bankrupt law and of their creditors, and held it provisionally until the question of fraud could be examined, in order that it might not be made way with or disposed of by Lisberger, who was daily selling off the stock. While the property was thus lawfully in possession of the court, and Lisberger had lawfully been placed under injunction from interfering with it, he voluntarily appeared by counsel, and upon petition filed, and affidavit as to the value of the goods, obtained an order from the court surrendering to him the property upon condition of his giving bond and security for its forthcoming to abide the orders of the court. If, under these circumstances, a solemn obligation to abide the orders of the court did not subject him to its jurisdiction in respect to that property, which had thus been released to him upon that express condition, it is difficult to conceive how any claimant, by intervening and dealing with a court, can become a party to its proceedings, and subject to its dominion. But, if Lisberger was a party to that suit, unquestionably he is bound by the order of the 8th of October, 1874, affirmed on appeal to the supervisory jurisdiction of this court, from which there is no appeal. That order could not have been the subject of appeal to the equity jurisdiction of this court; no such appeal has in form been attempted; what could be done directly will not be permitted to be done indirectly; and therefore the decree of this court of the 1st of November, 1875, stands as the law of this case, and the matter is res adjudicata.

II. If the order of the 8th of October, 1874, was re-examinable by this court, on this appeal, there was no error in it of which Lisberger could complain. Undoubtedly, if the views above presented are well founded, it was perfectly competent for the district court to have determined, in the bankrupt suit, to which Lisberger had thus submitted himself, what were his rights, if any, to the whole estate of the bankrupts which he claimed, and what were the rights of the assignee of the bankrupt in respect thereto. Indeed, as he had thus become a party by his said action and the action of the court on the 18th of June, 1870, when, a few days thereafter, to wit, on the 23d of June, 1870, by the adjudication in bankruptcy, the court decided that the transfer of the said goods to Lisberger was, under the circumstances, fraudulent and void as between Engle & Son and their creditors, in legal effect it necessarily decided also that the transfer was fraudulent and void as between Lisberger and the creditors. . . . Nay, I go further. Without the permission of the court, and, perhaps, also the acquiescence of Lisberger, the assignee would have had no right to litigate Lisberger's claim in a separate suit. No suit certainly could have been brought on the bond until there was breach of the condition: and there could be no breach of the condition until Lisberger had failed to

have the property or its value forthcoming upon the order of the court. And as the bond was but a substitute for the property, the principle of Taylor v. Carryl, 20 How. [61 U. S.] 583, applied, and no other jurisdiction could lawfully have interfered with the possession of the court over the subject of litigation, or with its jurisdiction to determine the rights of the parties in respect thereto. And the assignee, who was an officer of the court, was the last person who could have instituted a separate suit to determine those rights elsewhere. And as to Lisberger, it has ever seemed to me in the highest degree questionable whether, if without any suggestion on his part, and without an order from the court, the assignee had originally brought a separate suit in another forum to recover from him the value of these goods, a plea to the jurisdiction would not have availed him, upon the ground that the whole matter was sub judice in the bankrupt suit in which he    appeared, and had bound himself, under bond and security, as a substitute for the property to have it or its value forthcoming to abide the order of the court, and that thus he could not be made subject to two different jurisdictions, in two different suits, at the same time, for the same thing—the court first acquiring jurisdiction having the right to hold on to it for the purpose of determining the matter in controversy. And I conceive that if Lisberger had not objected to the jurisdiction of the bankrupt court, and had not required litigation in a separate suit, and thus estopped himself from objecting to such other litigation, it would have been difficult, if not impossible, to answer such a plea in a separate suit in another forum.

Having ever entertained these views, when, upon the succession of his honor, Judge Hughes, to the bench, in 1874, Lisberger's objection to the jurisdiction in the bankrupt suit was renewed, I did not fail fully to present them, together with the authorities above cited, in their support, except O'Brien v. Weld [supra], and Wiswall v. Campbell [supra]; but upon the authority of the supposed ruling cases of Smith v. Mason [supra] and Marshall v. Knox [supra], then unexplained, and, as I venture to think, little understood, as indeed were the sections of the acts of congress under construction (in consequence of which the whole practice in the different district courts had become unsettled and conflicting), his honor, Judge Hughes, felt constrained to sustain the objection, and hence his order of the 16th of June, 1874, dismissing the petition of the assignee for want of jurisdiction. An omitted part of the record would show that an appeal to the supervisory jurisdiction was entered and perfected by the assignee, and that it was subsequently abandoned in accordance with a provision of the bankrupt act allowing such a course to be taken. The jurisdiction for such abandonment is sufficiently indicated in the subse-

quent orders of the court. Being of opinion that the court had no jurisdiction in the bankrupt suit to litigate Lisberger's claim, his honor seeing the nature of the transaction, and the hardship and loss which would fall upon the creditors, if their rights should be pretermitted to forms and technicalities, adopted a course in furtherance of justice which had been recommended by the practice of other courts, and which has now been sustained by the supreme court (Stickney v. Wilt, 23 Wall. [90 U. S.] 150) in treating and considering the petition of the assignee as in substance a bill in equity, and following a suggestion in one of the cases, directed process to issue upon it accordingly as a bill.

. . .

I thought that course to be unnecessary, because I thought the court had full jurisdiction to litigate the claim in the bankrupt suit. But in my judgment, while that was true, the court was not compelled, under the circumstances, to exercise that jurisdiction, and if Lisberger insisted upon separate litigation, it was entirely competent to the court to grant it. It had jurisdiction of the subject-matter and of the parties, and it was, as I thought, simply a question of practice, a matter of convenience and discretion, whether it should allow the claims to be litigated in that suit, or be more formally litigated in another and independent suit. It chose the latter course, and of its own suggestion. In legal substance, the so-called petition of the 12th of April, 1871, contained all the essential elements of a bill in equity, as will be shown, and by its order of the 8th of October, 1874, the district court merely, in effect, determined that instead of being mixed up with that suit, it should be disconnected with it and be formally proceeded in as a separate case. It eliminated the case from the bankrupt suit. That was, in my view, the whole substance and legal effect of the order. Its practical effect, though it led to delays, was eminently just. Instead of appealing, when his demurrer to the petition was overruled by Judge Underwood, and then have had the question of jurisdiction definitely decided by the appellate court, Lisberger had pleaded over, and filed an elaborate answer, and upon issues joined, had several times gone to the jury upon the facts. There could, therefore, operate no surprise or injury to him in remitting the controversy for settlement to a separate suit upon the petition considered as a bill presenting the same issues, in the same words. The court at last granted his prayer. That was all. But if he wanted a separate suit, he must take it upon such terms as would not operate a fraud upon others. The separate suit, in legal effect, had already been brought. It had been interposed in the bankrupt suit, and the court, instead of hearing the two suits together, had separated them, each to stand as of the date of its origin.

In directing the petition to be considered and treated as a bill, the court simply recognized the petition as a bill. It did not direct it to be converted or changed into a bill. It required no change to make it become what, in reality, it already was, in substance and effect. Nor did the court direct it to be filed. It had already been filed—filed under the order and with the approval of the court, indorsed in the handwriting of the judge, on the 12th of April, 1871. Had it been necessary, indeed, such is the large jurisdiction and liberal practice in amending, moulding, and controlling pleadings, in furtherance of justice and the prevention of injustice, exercised by all courts, and especially by all courts administering justice upon equitable principles and under the flexible forms of equity procedure, the district court might well have ordered the petition to be reformed and converted into a bill by suitable amendments of form.

But no amendment of form, much less of substance, was, in the judgment of the court, required here, and none was made. On the contrary, the court adopted and considered the petition as a bill, perfect in all essential respects, as was done in Stickney v. Wilt, 23 Wall. [90 U. S.] 150.

Sitting in bankruptcy, in the bankrupt suit, with all the analogous powers and jurisdiction certainly of a court of equity, in that suit, over the parties thereto, and having also express and special equity jurisdiction, ancillary and supplementary to that jurisdiction, it would indeed be strange if the district court had not jurisdiction to determine whether a paper filed in it by one of its officers, by its own order, and with its own approval, was or was not a bill in equity, and should be treated as such. That was the question decided by the order of October, 1874, affirmed by this court by its decree of the 1st of November, 1875. If there was error in the order, it was error of which the assignee might have complained, but of which Lisberger certainly had no ground to complain. It gave him what he all along demanded—a separate suit. He was duly served with process, appeared by counsel, pleaded to and answered the bill, took testimony, and was fully and fairly heard. He has himself thus treated the petition as a bill, and has now appealed to this court from the decree rendered upon it as a bill, and if it be not a bill, this court has no jurisdiction, on appeal in equity, to hear his appeal.

WAITE, Circuit Justice. On the 16th of May, 1870, Engle & Son, merchants, doing business at Richmond as retailers, sold their entire stock of goods to Lisberger. On the 17th June, following, Storrs Bros. and certain other creditors of Engle & Son commenced proceedings in bankruptcy against them in the district court for this district, and upon filing the petition obtained an order of court directing a seizure by the marshal of the goods sold, which were then in the possession

of Lisberger at the store formerly occupied by Engle & Son. In obedience to this order the marshal took the goods into his possession, and thereupon Lisberger at once filed his petition in the bankrupt court, asking that they might be restored to him upon his giving bond with security, conditioned for the forthcoming of the goods or the value thereof, to abide such further order·as might be made in the premises.

The prayer of this petition was granted June 18th, and on the same day Lisberger, with the defendants, Rosenbaum, Waggoner, and Harvey as his sureties, executed the required bond in the penal sum of eight thousand dollars, and received the goods from the marshal. June 23d Engle & Son were adjudicated bankrupts, and in due time one Brown was appointed assignee. He instituted some proceedings against Lisberger·to set aside the sale and recover the goods or their value, but his conduct in the premises not being satisfactory to the creditors, he was removed by order of the court, and Garnett, the present complainant, appointed in his place, April 4th, 1871. On the 12th of April, Garnett filed in the district court a petition entitled Storrs Bros. et als. v. Engle & Son, in bankruptcy, and addressed to Hon. J. C. Underwood, district judge, setting forth the proceedings in bankruptcy, his appointment as assignee, the sale to Lisberger, with the necessary averments to show that it was in fraud of the bankrupt law, the seizure of the goods by the marshal, and their subsequent restoration to Lisberger upon the execution of his bond, and concluding as follows: "Your petitioner therefore alleges the said sale, transfer, or conveyance to the said Lisberger to have been fraudulent under the bankrupt law, . . . null and void, and that the said stock or its value are assets in his hands for the purp??? ?? discharging the indebtedness of Engle & Son, and he prays that the said Lisberger be ordered to deliver up the said property or to pay the value thereof at the time of the conveyance to your petitioner, and in case of the delivery of the goods to make good the loss which has accrued by reason of sales subsequent to said fraudulent transfer or conveyance, and in default of said payment or delivery by the said Lisberger, that he and his sureties in the above-mentioned delivery bond, be required to pay the amount therein promised, but in this event your petitioner prays that the said Lisberger himself be required to pay in addition to the amount fixed in said bond, whatever additional value your petitioner shall be able to prove said stock of goods to have been worth at the time of said transfer to Lisberger, inasmuch as the penalty of said bond was fixed by the court upon ex parte affidavit, at a sum as your petitioner really thinks far below the actual value of the stock. Your petitioner finally prays that said S. Lisberger, M. Rosenbaum, J. J. Waggoner, and Wm. G. Harvey be made parties defendant to this petition, and be required

to answer the same on oath, and ·that such other and further relief be granted as is conformable to equity and the nature of his case." Copies of this petition were served on each of the persons named as defendants, and they appeared and demurred, alleging for cause "that the petitioner has no right to proceed against the defendants by petition or any other form of summary proceeding, and that the remedy of said petitioner, if any he have, is by bill in equity or by action at law in the district and circuit courts."

This demurrer was overruled by Judge Underwood, then the district judge, May 6th and, May 8th, Lisberger, not waiving the demurrer, filed an answer denying all the allegations as to the fraudulent character of the sale under the bankrupt law. The case was several times tried by Judge Underwood with a jury, but upon every trial the jury disagreed. After the death of that judge and the appointment of Judge Hughes as his successor, a motion was made by Lisberger to dismiss the petition for want of jurisdiction, which was granted June 16th, for the reason that the matter in issue was not triable under a petition in the bankruptcy suit; but June 19th the assignee filed a petition for a rehearing of the motion. July 11th the court "being willing to entertain the motion of the assignee with a view to amending the said petition in bankruptcy so as to make it a bill in chancery, in order that it may be sent to rules to be proceeded in as a bill in chancery," appointed July 16th for the hearing, and directed the service of a copy of the order thus made upon Lisberger and the counsel in the case. October 8th, 1874, a rehearing was granted, and "the court being satisfied that the said order of the 16th of June, 1874, entered at the instance of said Lisberger, dismissing said petition, was erroneous in not directing it to be proceeded with as a bill in chancery, doth set aside the same, and, considering that the said petition of said assignee, filed on the 12th of April, 1871, is in substance a bill in equity, and ought, under the circumstances, in furtherance of justice, to be so regarded and treated, the court doth order that the same do stand and be proceeded in as a bill, and for that purpose that the cause be remanded to rules, and process be issued against the defendants and the cause regularly matured according to law."

Under this order, subpoena was issued January 7th and served on the defendants, Lisberger and Rosenbaum, January 11th, 1875. No new service was made upon the other defendants. At the March rules, 1875, an order that the bill be taken pro confesso in default of appearance and answer, was duly entered in the order book. November 1st, 1875, the order of the district court under date of October, 1874, was affirmed by this court upon a petition for review, filed by Lisberger under the supervisory jurisdiction. March 7th, 1876, Harvey and Waggoner, two of the defendants, appeared, and by leave of the court filed

an answer setting up a discharge in bankruptcy subsequent to their execution of the delivery bond. To this a general replication was filed by the assignee. On the same day Lisberger appeared by counsel and, on leave, filed a paper in the cause, which is styled a demurrer, plea, and answer. In this paper it is insisted by way of demurrer, "that the petition does not present such a case as entitles the complainant to relief in equity;" and by way of plea, "the limitation [two years] prescribed by section 5056 of the bankrupt act." Then, without waiver of his demurrer or plea, he answers denying all the allegations in the petition of fraud in the sale. For this purpose he adopted his answer, filed May 8th, 1871, previous to the order transferring the cause to the equity side of the court. He denied his liability upon the bond for want of consideration, and insisted that all proceedings in the cause since June 17th, 1874, were irregular and without authority of law.

The complainant joined in the demurrer, and replied generally to the answer proper and to the answer in the nature of a plea. Depositions were taken, and, May 10th, 1876, after hearing, the district court overruled the demurrer and plea, and, upon the merits, entered a decree avoiding the sale and directing the payment of $5,618$\frac{14}{100}$, the ascertained value of the goods, with interest from May 16th, 1870, by Lisberger to the assignee. No mention is made of the bond in the decree, and no order was made in respect to any of the defendants except Lisberger. Both parties have appealed from this decree.

I am entirely satisfied, after a careful examination of the evidence, that the sale to Lisberger was void under the bankrupt law. Indeed, the counsel for the defendants, in their arguments here, have not seriously contended to the contrary. It is unnecessary, therefore, to consider the case at length in that aspect. The real controversy is as to the defence of the statute of limitations; and that depends entirely upon the time when the suit was commenced. If this was April 10th, 1871, when the petition was filed, the defence fails. If, however, it was January 11th, 1875, when the subpoena was served on Lisberger and Rosenbaum, or even as early as October 8th, 1874, when the order was made setting the cause down for hearing upon the equity side of the court, the statute does operate as a bar.

The pleading filed in the district court April 12th, 1871, was in an appropriate form for a petition for relief under the summary jurisdiction of the court sitting in bankruptcy. It was entitled as of the principal suit in bankruptcy, and was addressed to the district judge generally, without specifying the particular jurisdiction invoked. It was, however, equally good, in substance, as a bill in equity. It needed no amendments to make it available under the order of October 8th, 1874, for it contained a full statement of the

cause of action and a sufficient prayer for complete relief in equity. Although for a time the court acted upon the petition as if addressed to its jurisdiction while sitting in bankruptcy, and the complainant insisted that this was the correct practice, upon further consideration it was decided that the case was one to be determined only as a suit in equity, under the special jurisdiction for that purpose conferred by the bankruptcy law. Accordingly, it was assigned for hearing in that branch of the court. No new process was necessary, for the parties were already in court by their appearance under the notice already served. The question decided did not relate to the commencement of a new suit, but to the mode of procedure in one that had been already commenced. In Stickney v. Wilt, 23 Wall. [90 U. S.] 150, decided by the supreme court in November, 1874, just after the order of October 8th, 1874, was made in this case, the petition was in all matters of form the same as this. It was entitled as of the bankrupt suit, was addressed generally to the judge of the district court, and had no prayer for subpoena.

The district court having directed the sale of certain property by the assignee, free from all incumbrance set up by Wilt, he filed in the circuit court a petition for review under its supervisory jurisdiction. The circuit court, after hearing, reversed the order of the district court, sent the cause back with instructions to allow the claim of Wilt and proceed accordingly. From this action of the circuit court an appeal was taken to the supreme court, where it was decided that notwithstanding the form of the petition filed in the district court, it contained all the essential elements of a bill in equity, and as the subject-matter of the action was one cognizable only by the district court, under that provision of the bankrupt law which gave it jurisdiction of suits at law and in equity in respect to the property of the bankrupt, that court must be considered, in the absence of anything expressly appearing to the contrary, to have acted under that jurisdiction when it granted the relief complained of. For this reason it was held that the remedy of Wilt was by appeal to the circuit court, and not by petition for review under its supervisory jurisdiction, and that the action taken by the circuit court was irregular and of no effect, because of the want of power in the court to proceed in that manner with such a case. As, however, what the court did was under an assumed supervisory jurisdiction, the supreme court did not dismiss the appeal, but sent the cause back with instructions to the circuit court to dismiss the petition for review for want of jurisdiction, and suggesting to the district court the propriety of entertaining a bill of review in equity for the purpose of correcting any errors that might be found in the decree as originally entered there.

As it seems to me, that case is decisive of

this. There, as the suit was one properly cognizable in equity only, the supreme court presumed it was heard and determined as such. Here the court at first proceeded summarily with the cause, treating it as a part of the principal suit in bankruptcy; but before it was finally disposed of, corrected the supposed error and set the matter down for hearing as a suit in equity. Thus was expressed what might have been implied under the ruling in Stickney v. Wilt [supra]. It is not necessary to inquire whether the court was correct when it decided that it could not take jurisdiction of the case upon a petition filed under the suit in bankruptcy. It is sufficient for all the purposes of this appeal that such was the decision, and that it was made at the instance of the defendant, Lisberger, himself. Certainly power to proceed in that way did not divest the court of its jurisdiction in equity; and if it did proceed in equity Lisberger cannot complain, because it was at his instance that this power of the bankrupt court was not employed.

It is, however, contended that the case was finally disposed of and the defendants discharged from further attendance when the order of dismissal was entered on the 16th of June. That order was avowedly made in the bankrupt suit. The motion was entered in that suit by Lisberger to dismiss the case from that jurisdiction. Any order made in the progress of such a suit could be vacated or modified by the bankrupt court upon proper showing at any time before the suit was finally disposed of, provided rights had not become vested under it which would be disturbed by the change. The supreme court has so decided in Sandusky v. First Nat. Bank, 23 Wall. [90 U. S.] 293. Here, no such rights had intervened, and the bankrupt court, upon application duly made, and after notice, vacated the order as one improvidently entered. This left the case in the district court to be proceeded with in such manner as might be proper. Lisberger certainly made himself a party to the bankrupt suit for all purposes connected with his motion, and was consequently amenable to any process that might be necessary to correct errors in the action which he in that way secured for his own benefit. I conclude, therefore, that the defence of the statute of limitations cannot be sustained, and that the case was properly in the district court for adjudication, as a suit in equity, when the decree was rendered.

One further suggestion only, made by the defendants against an affirmance of the decree, remains to be considered. It is claimed that before there can be a recovery against the defendants, the amount of debts owing by the bankrupt must be ascertained. This I do not consider necessary. The schedules which are filed as evidence show an indebtedness far in excess of the value of the goods. This certainly makes a prima facie case for recovery. The presumption is that all debts will be proved if there are assets for distribution. But, be that as it may, as the sale is void under the bankrupt law, and some debts have been proven, the assignee is entitled to his decree, leaving the defendant to make good his claim, if any he has, to any surplus that may remain after the debts are satisfied. It follows that the decree must be affirmed under the appeal of Lisberger.

The complainant has, however, appealed, and insists that the value of the goods was greater than was found by the district court. The evidence upon this branch of the case is quite unsatisfactory. It consists almost exclusively of the estimates of witnesses which are to my mind very unreliable. If the case had not been so long pending I would send it to a master, but it is very doubtful whether at this late day any more satisfactory testimony could be obtained than that which is now here. There is nothing to show what the general character of the stock was, whether new or shopworn; but when the order for its restoration to Lisberger was made, the goods were in the possession of the marshal, and subject to the inspection of all parties interested. At that time a bond with a penalty of eight thousand dollars was considered sufficient to protect the creditors against loss. Under these circumstances I am inclined to concur in the opinion of the district judge, and to adopt the valuation fixed for the purpose of the sale as the amount of the recovery.

As it seems to be conceded that the goods cannot be restored to the assignee, let a decree be prepared finding the sale to Lisberger void under the bankrupt law, and ordering him to pay the assignee $5,618 14/100, with interest from May 16th, 1870, as the value of the goods in lieu of their delivery; and, in default, that execution issue as at law. As to the other defendants, the bill is dismissed without prejudice to the right of the complainant to proceed against them at law upon the bond in case it shall become necessary. Lisberger to pay all costs below and here.

